UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
TERRY T.,

                             Plaintiff,         <u>DECISION AND ORDER</u>
                                                 1:24-cv-09968-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In February of 2022, Plaintiff Terry T.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by Dennis Kenny Law, Josephine Gottesman, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 11).

This case was referred to the undersigned on July 8, 2025.  Presently pending is Plaintiff's Motion to Remand to Social Security Administration for

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Further Administration Proceedings. (Docket No. 13). For the following

reasons, Plaintiff's motion is due to be granted, and this case is remanded

for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on February 3, 2022, alleging disability

beginning May 31, 2018. (T at 268-81).[2]  Plaintiff's applications were

denied initially and on reconsideration.  He requested a hearing before an

Administrative Law Judge ("ALJ").

A hearing was held on September 12, 2023, before ALJ Michael

Stacchini. (T at 42-92). Plaintiff appeared with an attorney and testified. (T

at 55-83). The ALJ also received testimony from Warren Maxim, a

vocational expert. (T at 84-90).  During the hearing, Plaintiff amended his

alleged onset date to February 3, 2022. (T at 51).

### B.    ALJ's Decision

On February 22, 2024, the ALJ issued a decision denying the

applications for benefits. (T at 7-31).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since February 3, 2022 (the

amended alleged onset date) and met the insured status requirements of

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12.

the Social Security Act through December 31, 2023 (the date last insured). (T at 13).

The ALJ concluded that Plaintiff's schizophrenia, anxiety disorder, posttraumatic stress disorder, bipolar disorder, obesity, degenerative disc disease of the lumbar spine, asthma, obstructive sleep apnea, carpal tunnel syndrome, bicep tendonitis, and bilateral shoulder impingement were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: no more than occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and perform frequent reaching, handling, fingering, but must avoid concentrated exposure to atmospheric conditions, unprotected heights, and hazardous machinery. (T at 17).

The ALJ further found that Plaintiff could understand, remember and carry out simple routine tasks with regular breaks at approximately 2-hour

intervals, and could perform decision making and tolerate changes in a work setting that required only simple, routine, and repetitive tasks, with brief/superficial interaction with the public and only occasional interaction with coworkers and supervisors without tandem tasks. (T at 14).

The ALJ concluded that Plaintiff could not perform his past relevant work as a store manager. (T at 24). However, considering Plaintiff's age (40 on the amended alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 25).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between February 3, 2022 (the amended alleged onset date) and February 22, 2024 (the date of the ALJ's decision). (T at 26).

On October 28, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.   Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on December 26, 2024. (Docket No. 1).  On April 15, 2025, Plaintiff filed a Motion for Remand to the Social Security Administration for Further Administrative Proceedings, supported by a memorandum of law. (Docket Nos. 13, 14).  The Commissioner interposed a brief in opposition to the motion on July 11, 2025. (Docket No. 17).  On July 21, 2025, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 18).

## II.  APPLICABLE LAW

### A.   Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla"

and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of his request for reversal of the ALJ's decision.  First, he challenges the ALJ's RFC determination regarding his physical and mental limitations.  Second, Plaintiff argues that the ALJ's step five analysis was flawed.  The Court will address each argument in turn.

### A.    RFC

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).

When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§

8

404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

Here, Plaintiff challenges the ALJ's assessment of his RFC, contending that the ALJ overestimated his ability to meet the physical and mental demands of basic work activity. The Court will examine both aspects.

### 1.    Physical RFC

The ALJ concluded that Plaintiff retained the RFC to perform light work, with the following limitations: no more than occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and perform frequent reaching, handling, fingering, but must avoid concentrated exposure to atmospheric conditions, unprotected heights, and hazardous machinery. (T at 17).

For the following reasons, the Court finds the ALJ's assessment of Plaintiff's physical limitations is supported by substantial evidence.

First, the ALJ's determination is supported by medical opinion evidence. Dr. Kautilya Puri performed a consultative examination in April of 2023. Plaintiff demonstrated normal gait, full range of motion, no sensory

deficits, and full muscle strength in his upper and lower extremities. (T at 1018-19). Dr. Puri diagnosed asthma, bipolar disorder, attention deficit hyperactivity disorder, osteoarthritis/rheumatoid arthritis with multiple joint pain, and obesity. (T at 1020).

Dr. Puri opined that Plaintiff had mild limitation with respect to squatting, bending, stooping, kneeling, overhead reaching, and lifting weights. (T at 1020). Dr. Puri noted mild limitation in Plaintiff's gait and activities of daily living and recommended that Plaintiff not be in an environment that would aggravate his respiratory symptoms. (T at 1020).

In April of 2023, Dr. J. Koenig, a non-examining State Agency review physician, opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation (T at 142-44, 155-57).

The ALJ found the opinions of Dr. Puri and Dr. Koenig partially persuasive, noting their consistency with the overall record (as discussed below) and support in Dr. Puri's generally unremarkable clinical findings. (T at 22-23). The ALJ concluded, however, that Plaintiff was somewhat more

impaired than Dr. Puri and Dr. Koenig assessed and incorporated additional limitations into the RFC determination. (T at 22-23). *See Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at \*2 (W.D.N.Y. Mar. 6, 2018)("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand.")(emphasis in original)(collecting cases); *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999)(noting that "the ALJ's RFC finding need not track any one medical opinion").

Second, the ALJ's assessment of Plaintiff's physical limitations is supported by a reasonable reading of the record.  The ALJ noted that the treatment notes, while documenting complaints of pain and limitation, generally showed unremarkable clinical findings, including normal gait and full or near full motor strength. (T at 22-23, 1024, 1028, 1032, 1036, 1040, 1507, 1512, 1520, 1524, 1527, 1529, 1532).  X-rays of Plaintiff's right shoulder were normal. (T at 22, 1025).

Third, the ALJ gave appropriate consideration to Plaintiff's reported activities of daily living, which included self-care, household chores, and childcare. (T at 23, 57-69).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount claims of disabling

limitation, where, as here, the claimant's activities could reasonably be considered inconsistent with that level of impairment. *See Riaz v. Comm'r of Soc. Sec.*, No. 20CIV8418JPCSLC, 2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022)(collecting cases), *report and recommendation adopted*, No. 20CIV8418JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

While Plaintiff suffers from pain and limitation and the record supports a degree of impairment, the ALJ did not dismiss this evidence and, instead, found Plaintiff limited to a reduced range of light work. (T at 17).

However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for his assessment of Plaintiff's physical limitations, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.

This is sufficient to sustain the disability determination under the deferential standard of review applicable here. *See Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude*

*otherwise*.")(emphasis in original) (citation and internal quotation marks omitted); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted).

### 2.    Mental RFC

The ALJ determined that Plaintiff retained the RFC to understand, remember and carry out simple routine tasks with regular breaks at approximately 2-hour intervals, and could perform decision making and tolerate changes in the a work setting limited to simple, routine, and repetitive tasks, and requiring no more than brief/superficial interaction with the public and occasional interaction with coworkers and supervisors without tandem tasks. (T at 14).

Plaintiff argues that the ALJ's decision cannot be sustained because the record lacks a functional assessment from a treating mental health provider.

For the following reasons, the Court finds a remand required.

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

This obligation applies even where, as here, the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ recognized that Plaintiff's schizophrenia, anxiety disorder, posttraumatic stress disorder, and bipolar disorder were severe impairments (T at 13) that significantly limit his ability to meet the mental demands of basic work activity. (T at 17).

Thus, the dispositive question is not *whether* Plaintiff's multiple impairments limit his ability to meet the mental demands of basic work activity, but to *what extent*.

As discussed further below, the only medical opinion of record from an examining physician assessed marked impairment in Plaintiff's mental functioning. (T at 563-64).

The record discloses that Plaintiff saw a therapist once a week and a nurse practitioner once a month for medication management. (T at 561).

Although the record contains treatment notes, there is no functional assessment from a treating mental health provider.

Rather than seeking such an assessment, the ALJ discounted the sole opinion provided by a physician who examined Plaintiff and concluded that Plaintiff retained the RFC to meet the mental demands of a reduced range of work.  (T at 19-21).

This conclusion, which is based on the ALJ's own reading of the treatment record and the opinions of non-examining review physicians, cannot be sustained even under the deferential review applicable here.

In sum, in a case where, as here, the claimant has multiple severe mental impairments, which limit his functioning, the need to seek an assessment from a treating provider is obvious and well-settled.

"[A]n ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

15

Underpinning the heightening of the ALJ's duty is a recognition that the records and opinions of treating mental health providers are particularly probative. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the Commissioner no longer applies the "treating physician's rule," the duty to develop the record, which includes contacting treating providers when needed to afford the claimant a full and fair hearing based on an adequately developed record, applies to claims governed by the new medical opinion regulations. *See, e.g., Snoke v. Comm'r of Soc. Sec.*, No. 22-CV-3708 (AMD), 2024 WL 1072184, at *9 (E.D.N.Y. Mar. 12, 2024); *Fintz v. Kijakazi*, No. 22-CV-00337(KAM), 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 316 (E.D.N.Y. 2023); *see also Ramos v. Comm'r of Soc. Sec.*, No. 20-CV-9436 (OTW), 2023 WL 3380660, at *2 (S.D.N.Y. May 11, 2023).

The need for a treating provider assessment was compounded in this case because, as discussed above, the sole medical opinion in the record from an examining physician evidences disabling mental limitations.

Dr. Konstantinos Tsoubris performed a consultative psychiatric evaluation in June of 2022. Dr. Tsoubris diagnosed schizoaffective disorder, bipolar type; social anxiety disorder with panic attacks; and posttraumatic stress disorder. (T at 564).

Dr. Tsoubris assessed mild limitation in Plaintiff's ability to understand, remember, or apply simple directions and instructions; moderate impairment as to understanding, remembering, or applying complex directions and instructions; marked limitation as to using reason and judgment to make work-related decisions; marked impairment with respect to interacting with supervisors, co-workers, and the public; no limitation as to sustain concentration and pace; and marked impairment with respect to sustaining an ordinary routine, maintaining regular attendance, regulating emotions, controlling behavior, and maintaining well-being. (T at 563-64).

The ALJ found Dr. Tsoubris's assessment of marked limitations unpersuasive. (T at 21). This conclusion is problematic in several respects.

First, the ALJ believed Dr. Tsoubris's opinion was "not supported by his own examination …." (T at 21). However, Dr. Tsoubris reported that Plaintiff appeared "[e]xtremely anxious," demonstrated impaired memory skills, and had poor insight and judgment. (T at 563).

Second, the ALJ concluded that Dr. Tsoubris's opinion was not consistent with "the totality of the psychiatric evidence that instead showed relatively stable and normal mental status examinations with only the occasional symptomatology." (T at 21).

Notably, however, the party best positioned to interpret the treatment history and opine as to how Plaintiff would respond to the mental demands of sustained work activity is a treating mental health provider. *See Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.")(citing 20 C.F.R. § 416.927(c)(2)); *see also Skartados v. Comm'r of Soc. Sec*., No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(noting that "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's

treating physicians")(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

Third, the ALJ overrated the relevance of Plaintiff's "stable" symptomatology based on his ability to maintain appropriate attendance and affect during periodic (weekly or monthly) encounters with supportive mental health professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, No. 17 CIV. 6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019)*, report and recommendation adopted sub nom. Primo v. Comm'r of Soc. Sec.,* No. 17 CV 6875-LTS-SLC, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018) (decision to discount opinion based on treatment notes indicating claimant

was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

The primary question presented is the extent to which Plaintiff's symptoms would be exacerbated if he was exposed to the demands of competitive, remunerative work on a consistent basis.  The judgment of Dr. Tsoubris was that Plaintiff would decompensate and be unable to meet many of the mental demands of basic work activity.  (T at 563-64).  The ALJ erred by discounting that conclusion and finding that Plaintiff retained the RFC to meet the mental demands of a range of work without seeking a functional assessment from a treating provider.

Moreover, the ALJ's reading of the record was selective.  Although Plaintiff was generally appropriate and cooperative during therapy sessions (many of which were conducted via videoconference) and experienced some stability and periodic progress with medication and treatment, he also engaged in rather restricted activities of daily living and consistently reported serious symptoms, including intense anxiety, interpersonal problems, emotional disturbance, and paranoid thoughts. (T at 1060, 1096, 1104, 1112, 1116, 1148, 1155, 1168, 1186, 1202, 1208, 1209, 1214, 1215, 1229-30, 1241, 1247, 1305, 1317, 1332, 1350, 1357, 1380, 1429). *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020) (cautioning

"ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

The Commissioner defends the ALJ's decision by pointing to the assessments of the non-examining State Agency review physicians, both of whom opined that Plaintiff had only moderate impairment in interacting with others and retained "the ability to sustain simple work-related tasks and activities in low contact settings." (T at 102-03, 105-09, 123-24, 126-30, 139-41, 144-46, 152-54, 157-59).

However, State Agency review opinions cannot, without more, constitute substantial evidence sufficient to support a denial of benefits. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990); *Gutierrez v. Kijakazi*, No. 21CV3211JPOVF, 2022 WL 16856426, at *16 (S.D.N.Y. Sept. 29, 2022), *report and recommendation adopted*, No. 21-CV-3211 (JPO), 2022 WL 16856936 (S.D.N.Y. Nov. 9, 2022)

Given the stark conflict between the evaluation of the consultative physician (who did examine Plaintiff) and the opinions of the review physicians (who do not), and the absence of an assessment from a treating

provider, the Court concludes that the ALJ's reliance on the State Agency physicians' opinions is insufficient to sustain his decision.

The Commissioner also argues that the ALJ was not obligated to seek a treating provider assessment because (a) he allowed Plaintiff's counsel to submit additional evidence, (b) counsel failed to provide a treating provider opinion or ask the ALJ for assistance in obtaining one, and (c) counsel affirmatively represented to the ALJ that the record was "complete." (T at 410).

In panel opinions, the Second Circuit has held that an ALJ may, in certain circumstances, rely on counsel's certification that the record is complete. *See, e.g., Jordan v. Comm'r*, 142 F. App'x 542, 543 (2d Cir. 2005); *Frye v. Astrue*, 485 Fed. App'x 484, 488 n.2 (2d Cir. 2012).

However, "it has stopped short of holding that the ALJ may delegate his or her duty [to develop the record] to the claimant's counsel." *Sotososa v. Colvin*, No. 15-CV-854 (FPG), 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016); *see also Edwards v. Berryhill*, No. 3:17-CV-298 (JCH), 2018 WL 658833, at *12 (D. Conn. Jan. 31, 2018)("ALJs have a duty to develop the record even in cases where the claimant is represented by counsel and may not delegate her duty to develop the record to the claimant's attorney.").

Here, for the reasons discussed above, the need for a functional assessment from one or more of Plaintiff's treating mental health providers was readily apparent and its absence prevents a fair adjudication of Plaintiff's applications for benefits.

While the Court finds it troubling that Plaintiff's counsel, having failed to obtain this obviously important evidence and having represented to the ALJ that the record was complete, now seeks a remand by arguing that the record was not, in fact, complete.

Nonetheless, "remand is required whenever further development of the record is necessary, even where (as here) the underdevelopment of the record is attributable, in part, to inaction by the claimant's counsel." *Martinez v. Saul*, No. 3:19-CV-01017-TOF, 2020 WL 6440950, at *12 (D. Conn. Nov. 3, 2020)(quoting *Vincent v. Astrue*, No. 08-CV-0956 (VEB), 2010 WL 10827101, at *8 (N.D.N.Y. Mar. 30, 2010)).

"Where, as here, it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of his affirmative obligation to develop the record by a statement of counsel." *Hilsdorf v. Comm'r of Soc. Sec.,* 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010).

A remand, therefore, is required for further development of the record and a proper assessment of Plaintiff's ability to meet the mental demands of basic work activity.

B.    *Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 25-26).  In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of photocopy machine operator, marker, and mail clerk, which exist in significant numbers in the national economy. (T at 25-26, 84-88).

Plaintiff objects to the representative occupations as obsolete and to the vocational expert's testimony as based on outdated information.

While some courts have expressed concern where the ALJ relied on representative occupations that appeared to be obsolete, *see, e.g., Feeley*

*v. Comm'r of Soc. Sec.*, No. CIV. 14-4970 KM, 2015 WL 3505512, at *11 (D.N.J. June 3, 2015); *Maldonado v. Comm'r of Soc. Sec.*, No. 21-CV-7594 (RWL), 2023 WL 243617, at *10 (S.D.N.Y. Jan. 18, 2023); *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5, n. 1 (D. Md. Mar. 1, 2018); *Lynch v. O'Malley*, No. 22-CIV-5620-CS-AEK, 2024 WL 728483, at *14 (S.D.N.Y. Feb. 21, 2024), other courts, including the Second Circuit in an unpublished decision,  have declined to accept this argument, finding that the ALJ is entitled to rely on the vocational expert's testimony and refusing to make a judicial finding as to whether an occupation is obsolete. *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011)("We decline Bavaro's invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her. A vocational expert testified to the existence of such jobs at the national and regional level. The ALJ was entitled to credit that testimony … and we will not disturb that finding based upon Bavaro's conclusory proclamations to the contrary."); *see also Angi W. v. Comm'r of Soc. Sec.*, No. 21 Civ. 0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023) ("[T]he Court would be loath to conduct its own analysis of job types and job availability and second guess the vocational expert's conclusions."); *Lucius R. v. O'Malley*, No. 3:22-CV-01312-MPS, 2024 WL

1200181, at *22 (D. Conn. Jan. 22, 2024); *Medranda v. O'Malley*, No. 23 CIV. 6633 (SLC), 2024 WL 4100567, at *8 (S.D.N.Y. Sept. 6, 2024)("The Court is not the proper authority to assess the types of jobs Ms. Medranda could perform and how many positions exist in the national economy.").

On June 22, 2024, the Social Security Administration issued an "Emergency Message" imposing heightened requirements on ALJs considering certain representative occupations "whose continued widespread existence multiple courts have questioned." *Denise W. v. Comm'r of Soc. Sec*., No. 23-CV-1098S, 2025 WL 322249, at *7 n.4 (W.D.N.Y. Jan. 29, 2025)(quoting Soc. Sec. Admin. Emergency Message (EM)-24027).

Notably, however, the Emergency Message became effective on January 6, 2025, and thus is not applicable to the ALJ's decision. Moreover, none of the representative occupations identified by the vocational expert are included in the Emergency Message. See EM-24027, at https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last accessed on August 2, 2025).

The Court, therefore, finds no reversible error in the ALJ's step five analysis (although the analysis will need to be performed again on remand

to the extent further development of the record changes the assessment of Plaintiff's RFC).

     *C.    Remand*

     "Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).

     Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

     Here, for the reasons outlined above, a remand is necessary to allow the ALJ to seek a functional assessment from one or more of Plaintiff's treating mental health providers.

## IV.  CONCLUSION

     For the foregoing reasons, Plaintiff's Motion for Remand to Social Security Administration for Further Administrative Proceedings (Docket No. 13) is GRANTED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed

to enter final judgment in favor of the Plaintiff and then close the file.


Dated: August 3, 2025                    _s / Gary R. Jones_
                                         GARY R. JONES
                                         United States Magistrate Judge